IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JEFFERY DANIEL STEVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14CV350 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jeffery Daniel Stevens ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff filed his application for Disability Insurance Benefits on January 25, 2011, alleging a disability onset date of May 2, 2007, later amended to August 1, 2009. (Tr. at 125-26, 15, 28.)[1] His application was denied both initially (Tr. at 65-77, 95-98) and upon reconsideration (Tr. at 78-93, 100-03). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 104-05.) Plaintiff,

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #6].

along with his attorney and an impartial vocational expert, attended the subsequent hearing on September 6, 2012. (Tr. at 15.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 24). On February 24, 2014, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: major depressive disorder, bipolar disorder, social anxiety, and cannibus abuse. The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 17.) Therefore, the ALJ assessed Plaintiff's RFC and determined that, although he could perform a full range of work at all exertional levels, Plaintiff had certain nonexertional limitations. Specifically, the ALJ limited Plaintiff to simple, routine tasks; low stress jobs with occasional decision making and changes in work setting; no production or pace work; only occasional interaction with the public and coworkers; and no tandem tasks. She further restricted Plaintiff to isolated work with only occasional supervision. (Tr. at 18-19.)

5

At step four of the sequential analysis, the ALJ determined that Plaintiff's RFC precluded him from performing any of his past relevant work. However, based on the vocational expert's testimony, the ALJ then determined at step five that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 23-24.) Therefore, the ALJ ultimately concluded that Plaintiff was not disabled under the Act. (Tr. at 24.)

Plaintiff now challenges the ALJ's RFC assessment in two respects. First, he claims that the ALJ failed to "consider or address the opinions of a board-certified treating nurse practitioner – a medical source – in assessing [Plaintiff's] RFC." (Pl.'s Br. [Doc. #10] at 3.) Second, Plaintiff contends that the ALJ failed to properly assess his credibility in accordance with Social Security Ruling ("SSR") 96-7p. (Id.) Plaintiff argues that these alleged errors rendered the ALJ's RFC finding unsupported by substantial evidence.

A. Medical Source Opinion

Plaintiff first argues that the ALJ erred by failing to assign any weight to a mental RFC questionnaire completed on August 29, 2012, by Lisa Poulos, a board-certified Adult Psychiatric Mental Health Nurse Practitioner. Ms. Poulos began treating Plaintiff for his bipolar disorder, depression, and anxiety disorders in August 2009 and served as Plaintiff's primary mental health care provider from that time forward. During this period, Ms. Poulos offered four opinions regarding Plaintiff's limitations. On December 20, 2010, she opined via letter that Plaintiff was unable to work "due to complications from Bi-Polar and Social Anxiety Disorder." (Tr. at 352.) In addition, in progress reports dated January 9, 2012, and September 5, 2012, Ms. Poulos similarly noted that, throughout the several years that

Plaintiff had been treated in her office, Plaintiff "has been unable to work" due to his mental conditions, and that his conditions persist. (Tr. at 350, 351.) Finally, on August 29, 2012, Ms. Poulos completed a detailed mental RFC evaluation, noting mild, moderate, and severe limitations in several specific areas, and noting that the limitations existed at the assessed level of severity since December 9, 2010.

In considering the evidence, ALJ acknowledged that "the medical evidence documents several opinions of Ms. Poulos, the claimant's nurse practitioner, indicating the claimant 'continues to be unable to work due to his mental condition.'" (Tr. at 22.) The ALJ then assigned partial weight to these opinions, noting only that, under 20 C.F.R. § 404.1527(d), whether a claimant is unable to work is a dispositive issue reserved to the Commissioner. (Id.)

Plaintiff does not challenge the ALJ's assessment of the first three opinions described above. Rather, he contends that the ALJ erred by failing to weigh the additional opinion evidence offered by Ms. Poulos in her August 29, 2012 mental RFC questionnaire. With respect to the August 2012 evaluation, the ALJ's decision does note this mental RFC evaluation by Ms. Poulos, but erroneously gives the date of Ms. Poulos' evaluation as December 9, 2010, which is the date that the limitations described in the questionnaire first existed at the assessed level of severity, not the date of the assessment itself. (Tr. at 21, 309.) The ALJ's decision summarized the extensive limitations set out in the questionnaire as follows:

> Ms. Poulos completed a mental residual functional capacity questionnaire on December 9, 2010, at that time she stated the claimant had mild difficulty carrying out very short and simple instructions and making simple work-related decision[s], which means a limitation, which distracts the . . . claimant

7

from the job activity no more than 1 hour per 8-hour workday. Ms. Poulos stated the claimant would be moderately limited in remembering locations and work-like procedures, remembering very short simple instruction[s], carrying out detailed instructions, performing activities within a schedule, maintaining regular attendance, working without special supervision, and completing a normal workday without [interruption] from psychological-based symptoms[.] [T]his would be equivalent to a limitation which distracts the [claimant] from the job activity more than 1 hour and up to 2 hours per 8-hour workday. Ms. Poulos stated the claimant was severely limited in remembering detailed instructions, maintaining attention/concentration for 2 consecutive hours, maintaining regular attend[ance], [being] punctual within customary tolerances[,] and completing a normal workday without interruption from psychological based symptoms, which is consistent with a limitation which distracts the claimant from the job activity more than 2 hours per [8-]hour workday.

(Tr. at 21-22 (citing Tr. at 308-09).)[4] However, despite this lengthy description, the ALJ never explicitly indicated what weight, if any, she accorded the myriad functional limitations opined by Ms. Poulos. Plaintiff now argues that this omission constitutes reversible error.

In making this contention, Plaintiff acknowledges that Ms. Poulos is a nurse practitioner and that nurse practitioners are not "acceptable medical sources" as defined in 20 C.F.R. § 404.1527, and, as such, their opinions are never entitled to controlling weight. (Pl.'s Br. at 7 (citing 20 C.F.R. § 404.1527(c)(2).) However, as explained in Social Security Ruling ("SSR") 06-03p, the opinion of a nurse practitioner must still be considered and may still may be given great weight when considered in the context of the record as a whole.

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical

---

[4] Notably, this summary includes all of the assessments on the first page of the evaluation, but does not include the additional assessments on the second page of the evaluation, including an assessment that Plaintiff was severely limited in performing at a consistent pace without an unreasonable number of rest periods, was severely limited in interacting appropriately with the general public, and was severely limited in responding appropriately to criticism from supervisors, and was moderately limited in getting along with coworkers without distracting them/exhibiting behavioral extremes and moderately limited in responding appropriately to changes in the work setting. (Tr. at 21-22, 308-09.)

8

sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

….

As set forth in regulations at 20 CFR 404.1527(b) and 416.927(b), [the Commissioner must] consider all relevant evidence in the case record when we make a determination or decision about whether the individual is disabled. Evidence includes, but is not limited to, opinion evidence from "acceptable medical sources," medical sources who are not "acceptable medical sources," and "non-medical sources" who have seen the individual in their professional capacity. The weight to which such evidence may be entitled will vary according to the particular facts of the case, the source of the opinion, including that source's qualifications, the issue(s) that the opinion is about, and many other factors.

….

Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

SSR 06-03p, 2006 WL 2329939, at *3-*4, *6; see also Foster v. Astrue, 826 F. Supp. 2d 884, 886 (E.D.N.C. 2011) ("SSR 06–03p dictates that ALJs must at least consider the opinions of these non-acceptable medical sources, especially when there is evidence in the record to suggest that a non-acceptable medical source had a lengthy relationship with the claimant

9

and can present relevant evidence as to an opinion about the claimant's impairment or ability to work."); McNeely v. Colvin, No. CIV. A. 2:13-767, 2014 WL 4929437 (S.D.W. Va. Sept. 30, 2014) (remanding case for failure to provide reasoning for rejecting opinion of licensed professional counselor, where "the ALJ's limited discussion of Ms. Perry's opinion appears at times inconsistent. For example, the ALJ stated that Ms. Perry's opinion provided no 'function limitations,' but it appears that Ms. Perry did opine in some detail concerning the limits of McNeely's memory, concentration, pace, task persistence, and social functioning. It is simply unclear how the ALJ analyzed and weighed those assessments.").

In raising this contention in the present case, Plaintiff also notes the similarities between this case and another recent decision in this district, Huffman v. Colvin, No. 1:10CV537, 2013 WL 4431964, at *5 (M.D.N.C. Aug. 14, 2013). In Huffman, the ALJ summarized the opinions of a consultative examiner, Dr. Appollo, but "never returned to address them." In remanding the case, the Court noted that

> [t]he ALJ did not accept [Dr. Appollo's] conclusions. . . . The ALJ did not reject them. And the ALJ never incorporated any of these findings, such as a limitation to simple tasks or to simple, routine, and repetitive tasks, into Plaintiff's RFC. As explained, while the ALJ does not have a duty to discuss every document of record, he does have an obligation to explain the weight of the opinions of probative medical sources. Without an explanation from the ALJ, the undersigned is unable to determine if the ALJ intended to give little weight to Dr. Appollo's opinion or if the ALJ inadvertently overlooked key aspects of it. The ALJ's acknowledgement of Dr. Appollo's opinion and subsequent failure to reject it or incorporate it in whole or in part into Plaintiff's RFC was error.

Id. Moreover, the Court in Huffman found that a "failure to meaningfully address" relevant opinion evidence did not constitute harmless error. Rather, "because this failure g[ave] rise to potential omissions in Plaintiff's mental RFC," the associated credibility analysis, and the

10

ALJ's determinations at later steps of the sequential analysis, the ALJ's failure to properly weigh the opinion evidence prevented "a thorough review of the ALJ's decision" and mandated remand. Id. at *7; Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir. 1984) (noting that the court "cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence.").

In response to Plaintiff's contentions, Defendant argues that the ALJ included Ms. Poulos' questionnaire among the opinions she assigned partial weight. Specifically, Defendant contends that "the ALJ determined, rightly so, that Ms. Poulos' opinions all amount to one assertion – i.e., Plaintiff's mental impairments result in disabling functional limitations." (Def.'s Br. [Doc. #12] at 9.) In considering this contention, the Court notes that the ALJ did, in fact, cite the evidence in question when assigning Ms. Poulos' opinions partial weight. (Tr. at 22 (citing Tr. at 308-09, 350-52).) However, the only reason given for assigning the opinion partial weight was that "Ms. Poulos is a nurse practitioner and based on 20 CFR 404.1527(d) is a medical source opinion [on] an issue reserved to the Commissioner." (Tr. at 22). While this explains the ALJ's rejection of the first three opinions, Ms. Poulos' mental capacity evaluation was not just an opinion on the ultimate issue of disability reserved to the Commissioner, and as Plaintiff correctly notes, the 2012 questionnaire chronicles many non-disabling limitations not encompassed by the ALJ's assignment of weight. Thus, there is no basis or explanation given that would allow the Court to follow the ALJ's reasoning with regard to Ms. Poulos' 2012 evaluation, and it is not clear if the ALJ intended to reject the 2012 evaluation on some other basis or inadvertently omitted or mischaracterized that 2012 evaluation.

11

Defendant also argues that "[i]n giving reduced weight to Ms. Poulos' opinion, the ALJ correctly relied upon the treatment notes." However, nothing in the ALJ's decision supports this assertion, and this Court must review the administrative decision on the grounds upon which the record discloses the action was based, not on counsel's post hoc rationalizations for agency action. See generally SEC v. Chenery Corp., 332 U.S. 194, 196 (1947). Defendant's reference to "the treatment notes" may be a reference to the ALJ's conclusion that Plaintiff's "impairments were improved with prescriptions and an over-the-counter supplement" (Tr. at 22). However, even if that conclusion by the ALJ could somehow be construed to reflect the ALJ's basis for analyzing and rejecting Ms. Poulos' 2012 mental capacity evaluation, that analysis would necessarily rely on the ALJ's inaccurate dating of the mental capacity evaluation, since the ALJ's analysis assumes that the mental capacity evaluation was made in December 2010, and the decision fails to address the fact that the mental capacity evaluation was actually made in August 2012, after the date of the cited medical records.

Furthermore, none of the restrictions ultimately included in the RFC find a clear basis in the questionnaire. Instead, they appear to stem entirely from the opinions of the state agency medical consultants, whose assessments pre-date Ms. Poulos' questionnaire by more than a year.[5] To the extent that the limitations opined by Ms. Poulos overlap with those of

---

[5] The state agency medical consultants found Plaintiff capable of SRRTs in a low stress environment. (Tr. at 69, 71, 72.) The consultants also found that Plaintiff (1) "[m]ay have problems with concentrating for extended periods of time and with working in close proximity with others for extended periods but can persist adequately on simple tasks," and (2) [s]hould be in [a] low personal and public contact position." (Tr. at 73-74.) Similarly, the RFC assessed by the ALJ, as related above, limited Plaintiff to simple, routine tasks; low stress jobs with occasional decision making and changes in work setting; no production or pace work; only occasional interaction with the public and coworkers; no tandem tasks; and isolated work with only occasional supervision. (Tr. at 18-19.)

12

the consultants, they are included in the RFC, but this overlap fails to remedy the ALJ's omission. Here, as in Huffman, the Court is "unable to determine if the ALJ intended to give little weight to [Ms. Poulos'] opinion or if the ALJ inadvertently overlooked key aspects of it." 2013 WL 443196, at *5.

The Court is left in this case with a mental functional capacity evaluation by a nurse practitioner who specializes in treating mental illness and who served as Plaintiff's primary mental health care provider, treating him approximately 20 times during the period in issue, in a case which involves solely mental impairments. In the circumstances, the ALJ's decision, which inaccurately dated Ms. Poulos' 2012 evaluation, and which summarized only part of the evaluation but then failed to address, acknowledge or weigh that evaluation, leaves this Court, as in Huffman, unable to determine whether the ALJ intended to reject that evaluation or inadvertently overlooked or mischaracterized it. In the circumstances, the Court is unable to follow the ALJ's reasoning and cannot fairly evaluate whether the ALJ's ultimate decision is supported by substantial evidence.

After careful consideration of the record, the Court recommends remand of this case to the ALJ with instructions to consider and weigh all of the opinion evidence of record in accordance with the Act. Given that this determination overlaps with the remaining issues raised by Plaintiff, and in light of the recommendation of remand, the remaining issues need not be further addressed or resolved by the Court at this time.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner

under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Summary Judgment [Doc. #11] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #9] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 9th day of September, 2015.

    /s/ Joi Elizabeth Peake
    United States Magistrate Judge

14